IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIMOTHY HOLLOWAY, | § | |
| TDCJ #1272973, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-2069 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

The petitioner, Timothy Holloway, is an inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"). Holloway has filed a petition for a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge a state court conviction. The respondent has answered with a motion for summary judgment, arguing that Holloway is not entitled to relief. (Doc. # 7). Holloway has filed a response, which includes a request for discovery, and a motion for an evidentiary hearing. (Docs. # 8, # 9). After considering all of the pleadings, the records, and the applicable law, the Court grants the respondent's motion and dismisses this case for reasons that follow.

## I.    BACKGROUND

A state grand jury returned an indictment against Holloway in cause number 988257, charging him with felony assault involving family violence. The indictment alleged that on August 16, 2003, Holloway unlawfully, intentionally, and knowingly caused bodily injury

to the complainant, who was a member of Holloway's household, by striking the complainant with his hand. The State enhanced the indictment for purposes of punishment with allegations that Holloway had a previous felony conviction for assault involving a member of his household. In that case, Holloway was convicted of assaulting the complainant by grabbing and squeezing the complainant's neck with his hand. The indictment further alleged that Holloway had at least two other prior felony convictions for aggravated assault of a peace officer and possession of a controlled substance.

On November 18, 2004, a jury in the 351st District Court of Harris County, Texas, found Holloway guilty as charged of assault involving family violence. Holloway conceded that the enhancement allegations against him were true. As a result, the trial court sentenced Holloway to serve forty years in prison.

On direct appeal, Holloway's appointed attorney filed a brief requesting leave to withdraw, commonly known as an "*Anders* brief," which advised that a professional evaluation of the record revealed no arguable ground for appeal.[1] The intermediate court of appeals conducted an independent review of the record and agreed that there were "no arguable issues that would support an appeal in this case[.]" *Holloway v. State*, No. 06-05-00024-CR, slip op. at 3 (Tex. App. — Texarkana Nov. 10, 2005) (affirming the conviction

---

[1] *See Anders v. California*, 386 U.S. 738, 744 (1967) (holding that counsel appointed for an appeal may request leave to withdraw if he finds the appeal to be frivolous, but must first file a brief identifying " anything in the record that might arguably support the appeal").

2

after rejecting six issues presented by Holloway in a *pro se* brief).  Holloway did not file a petition for discretionary review with the Texas Court of Criminal Appeals.

Holloway now seeks a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge his state court conviction.  Liberally construed, Holloway contends that he is entitled to relief for the following reasons:  (1) there was legally insufficient evidence to support his conviction; (2) the prosecutor withheld favorable evidence; (3) he was denied effective assistance of counsel at trial; (4) he was denied effective assistance of counsel on appeal; and (5) he is "actually innocent."[2]  Holloway's claims were rejected on direct appeal and on state habeas corpus review, where the Texas Court of Criminal Appeals denied relief based on findings and conclusions of law made by the trial court.  *See Ex parte Holloway*, No. 66,009-01 (Tex. Crim. App. Nov. 1, 2006).  The respondent has filed a motion for summary judgment, arguing that Holloway is not entitled to relief on any of his claims under the governing federal habeas corpus standard of review set forth below.

## II.   STANDARD OF REVIEW

Federal review of the pending habeas corpus petition is subject to the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies

---

[2]     Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.  *See Haines v. Kerner*, 404 U.S. 519 (1972);  *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).  Applying the requisite liberal construction to the pending habeas corpus petition, the Court has re-ordered the petitioner's claims for purposes of analysis.

to those habeas corpus petitions filed after its effective date of April 24, 1996). Embodying the principles of federalism, comity, and finality of judgments, the AEDPA "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067 (2001). Specifically, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).

The federal habeas corpus statutes require applicants for relief to first present their claims in state court and to exhaust all state court remedies through proper adjudication. 28 U.S.C. § 2254(b). To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies. If a claim has not been adjudicated on the merits in state court, federal review is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.), *cert. denied*, 516 U.S. 1005 (1995). The procedural default rule also prevents habeas review when a petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance. *See Coleman*, 501 U.S. at 730; *Rosales v. Dretke*, 444 F.3d 703, 707 (5th Cir.

2006) (noting that the procedural default rule prevents habeas petitions from avoiding the exhaustion requirement by defaulting their federal claims in state court).

For claims adjudicated on the merits, the AEDPA provides that a petitioner is not entitled to relief unless the state court's ultimate decision:

1.    was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.    was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (observing that the AEDPA standard is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning") (citation omitted), *cert. denied*, 535 U.S. 982 (2002). The burden is on the petitioner to show that he is entitled to relief under the highly deferential AEDPA framework. *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002).

Claims presenting pure questions of law and mixed questions of law and fact are governed by § 2254(d)(1). *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001). The Supreme Court has clarified that "clearly established Federal law" or precedent for purposes of § 2254(d)(1) "refers to the holdings, as opposed to the dicta," of decisions from the United States Supreme Court "as of the time of the relevant state-court decision." *Carey v. Musladin*, — U.S. —, —, 127 S. Ct. 649, 653 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   A state court decision is "contrary to" clearly established precedent if the state court arrives at a conclusion opposite to one reached by the

Supreme Court on a question of law or if the state court decides a case differently from the Supreme Court "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application" of clearly established precedent if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Id.*

Pure questions of fact are governed by § 2254(d)(2). *See Martin*, 246 F.3d at 475. In addition, a state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)). The petitioner's claims are examined below under this deferential standard of review.

III.    **DISCUSSION**

    A.    **Sufficiency of the Evidence**

Holloway insists that he is entitled to relief because there was insufficient evidence to support his conviction for assault involving family violence. Noting that a similar argument was raised and rejected on Holloway's direct appeal, the respondent argues that this claim does not merit a federal writ of habeas corpus.

On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal standard found in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir.) (citation omitted), *cert. denied*, 546 U.S. 831 (2005). This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. In conducting that review, a federal habeas corpus court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the prosecution. *See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995). "Where a state appellate court has conducted a thoughtful review of the evidence, moreover, its determination is entitled to great deference." *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993), *cert. denied*, 510 U.S. 1141 (1994) (citation omitted).

Holloway was charged with felony assault involving family violence against a member of his household. In Texas, a person commits the offense of assault if the person:

(1)    intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

(2)    intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

(3)    intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX. PENAL CODE § 22.01(a).  The offense of assault is a Class A misdemeanor.  *See id.*
However, the offense is a third degree felony if the assault involved violence against a
member of a family or household,[3] abuse by a member of a family or household toward a
child of the family or household, or "dating violence," as that term is defined by Section
71.0021 of the Texas Family Code.  *See* TEX. PENAL CODE § 22.01(b)(2);  TEX. FAM. CODE
§ 71.004.  A felony conviction for assault involving family violence also requires proof at
trial that the assailant has a prior conviction for assault of a family member in violation of
Chapter 19, or Sections 20.03, 20.04, or 21.11 of the Texas Penal Code against a person
whose relationship or association with the defendant is described by Sections 71.0021(b),
71.003, or 71.005 of the Family Code.  *See* TEX. PENAL CODE § 22.01(b)(2).

At trial, the complainant's sister testified that she received a phone call from the
complainant in the early morning hours of August 16, 2003.  *See Court Reporter's Record*,
vol. 3, at 9.  The complainant's sister got dressed and drove to the complainant's neighbor's
house, where the complainant had fled.  *See id.* at 11.  The complainant's sister noticed that
the complainant was injured and afraid:

> One of her eyes was swollen almost completely shut.  One side of her face was
> totally bruised and swollen.  She looked extremely distraught, crying, upset
> and afraid.

---

[3]    In Texas, a " '[h]ousehold'  means a unit composed of persons living together in the same
dwelling, without regard to whether they are related to each other." TEX. FAM. CODE
§ 71.005.

*Id*. at 12.  The complainant's sister clarified that the complainant was afraid of Timothy Holloway, with whom she had been living at the time of the incident.  *Id*. at 13.

The complainant testified that she had been living with Holloway for approximately three months before the incident on August 16, 2003.  *See id*. at 28.  The complainant testified that she had been at a "local lounge" known as the "Elbow Room" with Holloway on the night in question. *Id*. at 29.  The complainant testified that she and Holloway had both been drinking.  *See id*. at 29-30.  The complainant testified that she took Holloway home at approximately 1:00 a.m. and then returned to the club for another drink.  *See id*. at 30.  The complainant testified that she returned home "somewhere between 1:30 and 2:00 [a.m.]."  *See id*.

The complainant stumbled on the door step and fell when she came home, waking Holloway.  *See id*. at 31.  According to the complainant, Holloway immediately started beating her up, hitting her in the face with his fist and dragging her into the bedroom, where he "proceeded to keep hitting [her] in the face and choking [her]."  *Id*. at 32.  The complainant locked herself in the bathroom.  *See id*. at 33.  Eventually, she escaped the house by crawling through the bathroom window.  *See id*. at 33-36.  She ran to the neighbor's house, where she called her sister and the police.  *See id*.  The complainant was later treated at the emergency room of the San Jacinto Methodist Hospital.  *See id*. at 37.

The State introduced photographs taken by police at the hospital, where the complainant was treated for head trauma.  *See id*. at 38-39.  *See also Court Reporter's*

*Record*, vol. 5, State's Exhibits 1-6.  The photographs show that the complainant had scrapes and bruises on her face and neck, as well as an abrasion on one knee.  *See id*. State's Exhibits 1-5.  The complainant's lips were swollen "from being hit" and her left eye was swollen shut. *See Court Reporter's Record*, vol. 3, 40-41; State's Exhibits 2-4.  The complainant also required stitches for a cut over her left eye.  *See id*.  The complainant testified that she suffered these injuries when Holloway hit her repeatedly in the face with his fist and choked her by putting his hands around his throat.  *See id*. at 42.  The complainant testified that, after the assault, Holloway fled to Georgia because "he knew that the law would pick him up." *Id.* at 44.

On cross-examination, the complainant acknowledged that she had been drinking whiskey ("Jack Daniels") on the night in question and that she was also taking prescription medication for depression and anxiety. *See id*. at 46-48.  The complainant admitted that she had been at a bar located eight to ten blocks from her home (the Elbow Room), drinking with friends, starting at 9:00 p.m. on the night the assault occurred.  *See id*. at 51-53.  The complainant also acknowledged that Holloway had back surgery in June of 2003, and was taking medication for a "staph infection." *Id.* at 49.  The complainant testified that she might have had some shots of Tequila with a man named Burl McCartney, who was at the bar that night with two of his sisters.  *See id*. at 58, 60-61.

On re-direct examination, the complainant testified that she thought she was in love with Holloway on the night in question and that she had "put on heels" that she did not

usually wear and some new clothes that night in order to look nice for him.  *See id*. at 71.

Although she admitted that she had been drinking that night, it was the high heels, she

claimed, that caused her to stumble and fall when she returned home from the bar.  *See id*.

The complainant stated further that, although Holloway had undergone back surgery, he was

able to do "normal household chores" and that he could walk without assistance.  *Id*. at 71.

The complainant added that, while Holloway was repeatedly hitting her in the face and

choking her, he said "I'm going to kill you, bitch."  *Id*. at 73.  The complainant testified that

she was afraid she was "going to die."  *Id*. at 74.

A patrol officer with the City of Baytown Police Department, Officer Daniel

McWilliams, testified that he responded to a call for help in the early morning hours of

August 16, 2003.  *See id*. at 83.  When he arrived, Officer McWilliams discovered the

complainant at a neighbor's home.  *See id*.  Officer McWilliams described the complainant

as upset and injured.  *See id*.  Officer McWilliams observed that her left eye was swollen shut

and she had a laceration or cut over her left eye as well.  *See id*.  Officer McWilliams noticed

that her lips and nose were also swollen.  *See id*.  Because of the severity of her injuries,

Officer McWilliams requested another police unit and an ambulance.  *See id*. at 86-87.

Based on Officer McWilliams's observations, the complainant appeared afraid of Timothy

Holloway.  *See id*. at 89.  With help from another officer (Officer Steve Jones) Officer

McWilliams approached the house where the complainant had been living with Holloway.

*See id*. at 90.   There was no answer at the door and a search of the premises revealed that there was no one in the house.  *See id*. at 90-91.

Another patrol officer for the Baytown Police Department, Officer Steve Jones, testified that he was dispatched to assist Officer McWilliams during the early morning of August 16, 2003.  *See id*. at 98, 101.  Officer Jones observed that the complainant looked "[b]ruised, red, [and] beat up."  *Id*. at 102.  Officer Jones testified that he and Officer McWilliams checked every room in the house, but were unable to locate the suspect (Holloway) at the complainant's residence.  *See id*. at 103, 105.

A registered nurse at the San Jacinto Methodist Hospital, Carri Skrabanek, testified that she was working in the emergency room on August 16, 2003, when the complainant arrived with her sister.  *See id*. at 106.  Skrabanek testified that the complainant had multiple injuries with "a lot of swelling and contusions and a laceration to the face."  *Id*. at 108.  The complainant also had a "nasal fracture," meaning that she had suffered a "broken nose."  *Id*. Skrabanek clarified further that the "contusions" on the complainant's face and extremities were "deep bruising."  *Id*. Skrabanek observed that the complainant had been drinking but that she "didn't appear to be drunk."  *Id*. at 109.  Skrabanek testified that the complainant was "crying" and "tearful."  *Id*. at 113.  The complainant's face was "very, very swollen." *Id*.   Skrabanek reported that the complainant's left eye was swollen shut.  *Id*.  The complainant told Skrabanek that she had been "beaten up" by a man that she identified as her

"husband." *Id.* at 113. Skrabanek repeated that, although the complainant had been drinking, she was "alert and oriented" during the examination. *Id.* at 115.

On cross-examination, Skrabanek acknowledged that a person could sustain injuries to the face and nose by falling down. *See id.* at 118. In Skrabanek's opinion, however, the complainant was involved in a serious struggle in which the assailant had grip on her throat. *See id.* at 118-19.

The defense presented testimony from a friend of Holloway's, James Allen Castleberry, who stated that he observed the complainant at the bar on the night of the assault. *See id.* at 137. Castleberry testified that he saw the complainant drinking shots of Tequila with Burl McCartney and that she was "pretty well intoxicated" that night. *Id.* at 143-44. Castleberry testified that she was "getting belligerent and they asked her to leave the bar at one point." *Id.* at 144. Castleberry testified that, when she was asked to leave, the complainant became "upset and violent[.]" *Id.* at 145. Castleberry testified that, when he left the bar at 1:45 a.m., he walked outside and noticed the complainant on the ground and there were four women beating her up. *Id.* at 146. Castleberry testified that he recognized two of the women as Teresa McCartney and Debbie McCartney. *Id.* Castleberry identified the other women as Tonya Stewart and "Cindi," whose last name he did not know. *Id.* at 146-47. Castleberry testified that these women were dragging the complainant across the ground, pulling her hair, hitting her, and kicking her in the face. *Id.* at 147-48. Castleberry testified that she also saw the complainant get "clawed across the face with fingernails." *Id.* at 148.

On cross-examination, Castleberry admitted that he was in custody because he had violated his parole from a twenty-year prison sentence that he received in 1989 for delivery of marijuana. *See id.* at 150-51. Castleberry acknowledged that he did not call the police after seeing the fight between the complainant and the four women he described and that no one from the bar called the police either. *See id.* at 153-54. Castleberry elaborated on re-direct examination that he did not witness anything happen between the complainant and the four women who attacked her that "would lead to a fight." *Id.* at 155. Castleberry stated that they "got into kind of a slight argument inside the bar, but it wasn't really no big deal." *Id.* On further cross-examination, Castleberry acknowledged that he did not recount his story about the complainant being beaten up when he was first asked to give a statement about the incident. *Id.* at 156.

Holloway testified in his own defense. Holloway testified that he and the complainant lived together for approximately ninety days. *See Court Reporter's Record*, vol. 4, at 6. Holloway testified that he had "back fusion" surgery on June 6, 2003, and that he had prior surgeries in 1988, and 1995, for problems with his back. *Id.* at 6-7. As a result of his surgery, and a resulting infection, Holloway states that he was unable to bend or lift anything on the night in question. *Id.* at 9. Holloway testified further that he was unable to walk for more than fifteen minutes at a time. *See id.*

Holloway testified that, on the day that the alleged assault occurred, the complainant came home in an "intoxicated" state from shopping for school supplies for her two children.

14

*Id.* at 11.  Holloway stated that the complainant wanted to go out that night and that she rolled "a marijuana cigarette to take with her[.]"  *Id.* at 14.  Holloway testified that, while the two of them were at the bar, he observed the complainant have "four to five drinks."  *Id.* at 17.  Holloway stated that the complainant also drank five Tequila shots with Burl McCartney. *Id.* at 18.  Holloway testified that he asked the complainant to take him home because he was having "severe pain in [his] lower back" and because the complainant was "being obnoxious and it was embarrassing [him.]"  *Id.* at 19.

Holloway testified that he returned home by 11:00 p.m.  *See id.* at 20.  Holloway testified that he heard "jingling of keys" at 1:30 a.m. and presumed that it was the complainant trying to get in the front door.  *See id.* at 23.  Holloway testified that another man was standing at the door, physically holding the complainant in an upright posture.  *See id.* at 24.  Holloway stated that he thanked the man, who he had never seen before, for bringing Sandra home.  *See id.*  Holloway testified that he then went back to the bedroom and laid down, leaving the complainant standing at the door.  *See id.*  Approximately five minutes later, Holloway heard a "crashing noise in the living room."  *Id.* Holloway got up and went to the living room, where he saw the complainant "laying face down on the floor with her feet holding the screen door open."  *Id.* at 25.  Holloway rolled the complainant over and put her on the sofa, which was "very difficult because she was unable to get up on her own."  *Id.* Holloway said that it "looked like she had been run over by a truck, basically."  *Id.* at 26.

15

Holloway testified that she had blood on the side of her forehead and that her "right eye was swollen shut[.]" *Id.*

Holloway testified that he cleaned up the complainant's face with a washcloth and warm water and that he attempted to bandage the cut over her eyebrow with some gauze. *Id.* at 27. Holloway then reportedly informed the complainant, who he described as being "barely conscious," that he was "tired of patching her up" and that he was "going to leave" her because he was fed up with her "constant drinking." *Id*. at 27-28. With that, Holloway got dressed and left the residence, walking six blocks to his mother's house where he spent the night. *Id.* at 28. The next day, Holloway took a bus to Atlanta, Georgia, to pick up a car that his brother had given him as a birthday gift. *See id*. at 28-30. Holloway denied striking or choking the complainant on August 16, 2003. *Id*. at 34.

On cross-examination, Holloway acknowledged that he and the complainant had been living together when the complainant was severely beaten on August 16, 2003. *Id.* Holloway also conceded that he had prior felony convictions for aggravated assault, assault, and possession of cocaine. *See id*. at 36. Holloway admitted further that he had been convicted previously of assault involving family violence against a household member. *See id*. at 43. Holloway insisted that he left the house at 2:13 a.m. on the morning of August 16, 2003, and that the complainant was "asleep on the sofa" when he left. *Id.* at 40, 44.

In this instance, Holloway contends that the evidence was legally insufficient because his conviction was based solely on testimony from the complainant, who was intoxicated at

the time of the incident, and others who observed her injuries but did not see an assault take place.  Holloway denies that he assaulted the complainant and asserts that the injuries she suffered that night must have occurred when she was beaten up by four women in the parking lot of the Elbow Room bar.  Holloway also speculates that the complainant may have sustained her injuries when she fell coming in the front door or when she climbed out the bathroom window in order to get out of the house.  Citing his back injury, Holloway notes that he lacked the physical ability to assault the complainant in the manner that she described.

Holloway made similar challenges to the factual and legal sufficiency of the evidence on direct appeal.  In affirming the conviction, the appellate court rejected Holloway's claim after concluding that the evidence was both factually and legally sufficient to support the conviction:

> Holloway, in points of error two and four of his pro se brief, essentially argues the factual and legal insufficiency of the evidence. We agree with appellate counsel that the evidence in the record is factually and legally sufficient to support the verdict of guilty.
>
> In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). Because there is evidence in the record, which if believed would supply proof of each element of the offense, the evidence is legally sufficient.
>
> In reviewing the factual sufficiency of the evidence, we are required to determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). The jury is not justified in finding guilt if the evidence supporting the verdict is too weak to support the verdict of guilt beyond a reasonable doubt or if the evidence contrary to the

17

verdict is too strong to allow the verdict of guilt beyond a reasonable doubt to have been reached rationally. *Threadgill v. State*, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004). While the State's evidence of guilt is controverted by a fair amount of record evidence — Holloway's asserted physical infirmity, the asserted alternative beating of the victim by four women, and Holloway's denial that he assaulted the victim — deciding which evidence to believe is the responsibility and office of the jury, not of this Court. The jury alone judges the credibility of witnesses, the weight to be given their testimony, and the reconciliation of evidentiary conflicts. *Whitaker v. State*, 977 S.W.2d 595, 598 (Tex. Crim. App.1998). The jury believed the evidence supporting Holloway's guilt, not his innocence.

*Holloway v. State*, No. 06-05-00024-CR, slip op. at 4-5 (Tex. App. — Texarkana Nov. 10, 2005, no pet.).

To the extent that Holloway challenges the complainant's account of the assault, an assessment of witness credibility is "beyond the scope of review" permitted by *Jackson v. Virginia*, 443 U.S. 307 (1979). *Schlup v. Delo*, 513 U.S. 298, 330 (1995) (discussing the standard for challenges to the legal sufficiency of the evidence under *Jackson v. Virginia*). As set forth above, the evidence is sufficient under the *Jackson* standard, if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Under this standard, "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez*, 398 F.3d at 695. Based on its independent review of the record, this Court concludes that a rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. Because Holloway fails to show that his conviction was supported by insufficient evidence in violation of the

18

*Jackson v. Virginia* standard, he does not demonstrate that the state court's decision to reject this claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. Therefore, the respondent is entitled to summary judgment on this claim.

### B.    Withholding or Suppression of Favorable Evidence

Holloway contends that he is entitled to relief because the prosecutor withheld or suppressed favorable evidence in the form of police reports made by the patrol officers and "blood test" evidence that would have shown that the complainant was "totally intoxicated and/or legally intoxicated on the night of the incident." Holloway complains further that the prosecutor withheld or suppressed the fact that there was no evidence to show that the complainant climbed out the bathroom window in order to get out of the house. Holloway maintains, therefore, that his conviction violates the Due Process Clause.

The government's suppression of favorable evidence that is material to guilt or innocence violates a defendant's right to due process under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The government's duty to disclose extends to both impeachment and exculpatory evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). To establish a *Brady* violation, a defendant must prove that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant because it was either exculpatory or impeaching; and (3) the evidence was material. *See United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (citations omitted), *cert. denied*, 537 U.S. 1192 (2003). Evidence is material under

*Brady* when there is a "reasonable probability" that the outcome of the trial would have been different if the suppressed evidence would have been disclosed to the defendant. *See United States v. Moore*, 452 F.3d 382, 387-88 (5th Cir.), *cert. denied*, — U.S. —, 127 S. Ct. 423 (2006). A "reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

The state habeas corpus court rejected Holloway's claim, concluding that he failed to articulate sufficient facts which, even if true, would demonstrate that the State withheld exculpatory evidence in his case. *See Ex parte Holloway*, No. 66,009-01 at 92 (citing *Brady v. Maryland*, 373 U.S. 83 (1963); *Ex parte Kimes*, 872 S.W.2d 700, 702-703 (Tex. Crim. App. 1993) (holding that, in alleging a *Brady* claim, applicant has the burden of showing that the prosecutor failed to disclose evidence that was both favorable to applicant and material)). Holloway does not meet his burden to demonstrate that the state court's findings and conclusions were incorrect.

With regard to the blood tests that he claims would have established the complainant's intoxication, Holloway does not establish that there was a blood test taken of the complainant on the night of the assault. The record confirms that the opposite is true. The nurse who treated the complainant at the emergency room testified that no toxicology or blood samples were taken from the complainant on the night in question because it was not necessary for the purpose of treating her injuries. *See Court Reporter's Record*, vol. 3, at 124. Accordingly, Holloway fails to establish that this evidence existed.

20

Holloway does not explain how the other evidence that he references (the patrol officers' reports, evidence showing that the complainant did not climb through the bathroom window) was unavailable during discovery or through due diligence.   Likewise, Holloway does not allege facts showing that this evidence was favorable to his defense or that it was material to his guilt or innocence.   Although Holloway proceeds *pro se*, he is still required to provide sufficient facts in support of his claim for relief.  *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).   Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."  *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

In summary, Holloway has failed to support his claim with sufficient facts showing that the prosecutor engaged in misconduct by withholding material, favorable evidence in violation of *Brady*.   Absent such a showing, Holloway fails to demonstrate that the state court's decision to reject his claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  *See* 28 U.S.C. § 2254(d)(1).   Accordingly, Holloway is not entitled to a federal writ of habeas corpus on this issue.

**C.     Ineffective Assistance of Counsel at Trial**

Holloway complains that his trial attorney was ineffective for failing to locate and present testimony from the women who were reportedly seen beating up the complainant. Holloway argues further that his counsel was deficient for failing to present expert medical testimony about whether, because of his back injury, he could have assaulted the complainant on the date in question.  Thus, Holloway maintains that his attorney was deficient for failing to call these witnesses at trial.

On federal review, Holloway's claim is governed by the familiar standard found in *Strickland v. Washington*, 466 U.S. 668 (1984), which establishes the test for ineffective assistance of counsel.  To prevail on an ineffective-assistance claim, Holloway must establish both of the following two elements of the *Strickland* test: (1) that counsel's representation was deficient, such that it "fell below an objective standard of reasonableness," and (2) that the deficient representation caused prejudice, which requires a showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688; *see also Williams v. Taylor*, 529 U.S. 362, 390-91 (2002) (reciting the two-prong *Strickland* test).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

To establish deficient performance under the *Strickland* standard, the petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689), *cert. denied*, 543 U.S. 1056 (2005).

Even if defense counsel committed an error, a petitioner must still demonstrate actual prejudice as a result of his counsel's deficient performance.  Performance is prejudicial only if, but for counsel's errors, there is a reasonable probability that the final result would have been different and confidence in the reliability of the verdict has been undermined. *See Leal*, 428 F.3d at 548 (citing *Little v. Johnson*, 162 F.3d 855, 860-61 (5th Cir. 1998)). A "reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The respondent contends that this claim is without merit for reasons articulated by the state courts.  The state intermediate appellate court rejected Holloway's claim that his trial attorney was deficient for failing to subpoena the women who reportedly beat up the complainant outside the Elbow Room and concluded that trial counsel was well-prepared:

> Points of error one and three of Holloway's pro se brief asserts that he was denied the effective assistance of counsel. Holloway's point one asserts, specifically, that trial counsel was ineffective in failing to have two sisters served with witness subpoenas to obtain their testimony, which would

23

purportedly support the defense-alleged assault on the victim by those two women and two others.

To establish ineffective assistance of counsel, a defendant must prove by a preponderance of the evidence that (1) counsel's performance was so deficient as to fall below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Rylander v. State*, 101 S.W.3d 107, 109-10 (Tex. Crim. App. 2003) (citing *Strickland v. Washington*, 466 U.S. 668, 691 (1984)). A reasonable probability is one sufficient to undermine confidence in the outcome of the proceeding. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). We are not to speculate concerning why trial counsel acted as he or she did, but must instead be highly deferential and presume trial counsel's actions fell within the wide range of reasonable and professional assistance. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Any allegations of ineffectiveness must be firmly founded in the record, and the appellant must prove he or she was denied a fair trial based on the totality of the representation, not by isolated instances or by only a portion of the trial. *Id*. at 835; *Harling v. State*, 899 S .W.2d 9, 12 (Tex. App. — San Antonio 1995, pet. ref'd). In assessing whether a defendant has met both prongs of Strickland, we cannot speculate beyond the evidence contained in the record. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Generally, the trial record will not suffice to establish an ineffective assistance of counsel claim. *Thompson*, 9 S.W.3d at 813-14. A silent record usually cannot rebut the presumption that counsel's performance resulted from sound or reasonable trial strategy. *Jackson*, 877 S.W.2d at 771.

The record does not reveal whether the potential, but unused, witnesses were available or could have been found, nor does it reveal what they would have testified to if put on the stand. It would be improper for us to speculate. We agree with appellate counsel that the several defense motions filed before trial do not appear to leave room for any claim that counsel's pretrial activities were deficient in any way. We further agree with Holloway's appellate counsel that no evidence of ineffective assistance of counsel appears in this record. To the contrary, Holloway's trial counsel provided an engaged, spirited, energetic defense.

*Holloway v. State*, No. 06-05-00024-CR, slip op. at 8-9 (Tex. App. — Texarkana Nov. 10, 2005, no pet.).

The state habeas corpus court, which presided over Holloway's trial and sentencing, also rejected these claims on state habeas corpus review. *See Ex parte Holloway*, No. 66,009-01 (Tex. Crim. App. Nov. 1, 2006). In particular, the state court concluded that Holloway failed to show "that his counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different." *Id*. at 91 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* standard in Texas); and *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (defining the two-part *Strickland* standard)).

On federal habeas corpus review, Holloway repeats his state court claim that his counsel was ineffective for failing to call witnesses on his behalf. Holloway fails to show, however, that the state court erred by dismissing his claim or that he is entitled to federal relief on this issue. The Fifth Circuit has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas corpus review "because allegations of what a witness would have testified are largely speculative." *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. Aug. 14, 2007) (citing *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). "Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (citations and quotations omitted). To demonstrate the required *Strickland*

prejudice on a claim of ineffective assistance in this context, a petitioner "must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).

Holloway does not allege or show that any of the proposed witnesses would have testified on his behalf if they had been called. In that regard, Holloway assumes that the women that he accuses of beating the complainant on the night in question would have been willing to come to court and confess that they assaulted her. Likewise, Holloway does not provide a summary of the testimony that the witnesses would have offered and he does not otherwise show that the testimony would have been favorable. Absent affidavits (or similar matter) from any of the above-referenced witnesses, the petitioner's claim is speculative and conclusory, and does not demonstrate either deficient performance or resulting prejudice on his trial counsel's part. *See Sayre*, 238 F.3d at 636.

In this instance, Holloway has not alleged sufficient facts to establish deficient performance or actual prejudice, and he further fails to demonstrate that he received ineffective assistance of counsel at his trial. Holloway likewise fails to show that the state court's decision to reject his claim was contrary to clearly established Supreme Court precedent. Accordingly, Holloway fails to show that he is entitled to relief on his claim for ineffective-assistance under the deferential standard found in 28 U.S.C. § 2254(d).

**D.      Ineffective Assistance of Counsel on Appeal**

Holloway contends that he is entitled to relief because he was denied his constitutional right to effective assistance of counsel on appeal. The Fourteenth Amendment to the United States Constitution guarantees a criminal appellant the right to counsel in his first appeal of right. *See Evitts v. Lucey*, 469 U.S. 387 (1985); *Douglas v. California*, 372 U.S. 353 (1963). The right to counsel, where present, also entails "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). "'Persons convicted of a crime are entitled to receive effective assistance of counsel in their first appeal of right,' but counsel is not required to raise every nonfrivolous issue." *Givens v. Cockrell*, 265 F.3d 306, 310 (5th Cir. 2001) (quotation omitted). The right to counsel on appeal "does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal." *Smith v. Robbins*, 528 U.S. 259, 278 (2000).

A habeas corpus petitioner who claims that he was denied the right to effective assistance of counsel on appeal must satisfy the above-referenced *Strickland* standard by showing that his counsel's performance was deficient, and that counsel's deficient performance resulted in actual prejudice. *See Amador v. Quarterman*, 458 F.3d 397, 410 (5th Cir. 2006), *cert. denied*, — U.S. —, 127 S. Ct. 2129 (2007). Because there is no right to appellate counsel in the absence of a nonfrivolous issue for appeal, a petitioner challenging the effectiveness of his appellate attorney must demonstrate deficient performance by showing that his counsel "was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and raise

27

them." *Robbins*, 528 U.S. at 285. If the petitioner succeeds in such a showing, then he must establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal." *Id.*

In this case, Holloway does not contend that his attorney was deficient for failing to raise a non-frivolous issue. Nor does Holloway endeavor to show that, but for his attorney's error, there was a reasonable probability that he would have prevailed on appeal. Instead, he complains that his attorney was deficient for failing to notify him of his right to file a *pro se* petition for discretionary review with the Texas Court of Criminal Appeals.

The respondent notes that Holloway's claim was considered and rejected on state habeas corpus review. The state habeas corpus court considered two affidavits from Holloway's appointed appellate attorney, Clinton Greenwood, and made the following findings of fact based on the record:

1.  The Court appointed Clinton Greenwood as appellate counsel for the applicant in the primary case, and Greenwood represented the applicant through the course of the applicant's direct appeal; however, Greenwood did not file a petition for discretionary review on the applicant's behalf.

2.  On December 20, 2004, attorney Deborah Summers, acting as assistant to appellate counsel Clinton Greenwood, visited applicant in the Harris County Jail and reviewed his rights with him. Summers further informed applicant of his right to file a *pro se* petition for discretionary review with the Court of Criminal Appeals.

3.  On October 11, 2005, appellate counsel Clinton Greenwood filed an *Anders* brief and Motion to Withdraw in the Sixth Court

28

of Appeals and Greenwood sent copies of the brief and motion to Withdraw to applicant.

4.    On November 10, 2005, the Sixth Court of Appeals delivered an opinion affirming the applicant's conviction and sent notice to both appellate counsel Clinton Greenwood and the applicant.

5.    On December 7, 2005, applicant sent a letter to appellate counsel Clinton Greenwood in which applicant indicated that he was aware of his right to file a *pro se* petition for discretionary review.

*Ex parte Holloway*, No. 66,009-01 at 90-91.  Based on these findings, the state habeas corpus court concluded that Holloway failed to show that his appellate counsel's performance was deficient or that counsel failed to inform Holloway that he had a right to file a *pro se* petition for discretionary review.  *Id.* at 91 (citing *Ex parte Butler*, 884 S.W.2d 782, 783 (Tex. Crim. App. 1994); *Ex parte Wilson*, 956 S.W.2d 25, 27 (Tex. Crim. App. 1997)).

Under the governing standard of review, the state court's factual findings are entitled to deference and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)).  The state court's findings are supported by the record, which contains a letter from Holloway to Greenwood indicating that Holloway was aware of his right to seek a *pro se* petition for discretionary review within the applicable time limit.  *See Clerk's Record*, Letter dated December 7, 2005. Holloway has failed to meet his burden to overcome the presumption of correctness and he does not otherwise allege or show that the state court's

29

conclusion was based on an unreasonable application of the facts.  Accordingly, the state court's finding that Holloway was informed of his right to file a *pro se* petition for discretionary review is presumed correct for purposes of federal habeas corpus review.

Alternatively, even if Holloway's appellate counsel did fail to provide his client with notice of his right to pursue a *pro se* petition for discretionary review, the Fifth Circuit has recognized that there is no claim for ineffective assistance of counsel on appeal under these circumstances.  In *Moore v. Cockrell*, 313 F.3d 880 (5th Cir. 2002), the Fifth Circuit held that appellate counsel is not constitutionally ineffective for failing to timely notify a defendant of the outcome of his direct appeal, thereby depriving him of the opportunity to file a petition for discretionary review.  In so holding, the Fifth Circuit noted that the right to appellate counsel is limited, entailing only "an adequate opportunity to present [a defendant's] claims fairly in the context of the State's appellate process."  *Id.* at 882 (citing *Ross v. Moffitt*, 417 U.S. 600, 619 (1974)).  The Fifth Circuit further emphasized that, "[w]hen a state grants a criminal defendant an appeal of right, the Constitution requires only that the defendant's claims be 'once . . . presented by a lawyer and passed upon by an appellate court.'" *Id.* (quoting *Jackson v. Johnson*, 217 F.3d 360, 364-65 (5th Cir. 2000)).  Holloway's right to appeal ended once the intermediate court of appeals issued its decision.  Absent a showing that Holloway had a right to discretionary review, he cannot show that he was denied his right to counsel during that process.

Because Holloway's claim mirrors the one rejected in *Moore*, that decision forecloses relief in Holloway's favor.  In that regard, Holloway fails to show that the state court's decision to reject his ineffective-assistance claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  *See* 28 U.S.C. § 2254(d)(1).  Therefore, Holloway is not entitled to a federal writ of habeas corpus on this issue.

### E.      Actual Innocence

Holloway complains that, because the evidence was legally insufficient to support his conviction, he is "actually innocent."  Holloway did not present any new evidence in support of this claim on state habeas corpus review, quarreling instead with the complainant's credibility.  *See Ex parte Holloway*, No. 66,009-01 at 2-17 (State Application).  The state habeas corpus court rejected Holloway's assertion that he was actually innocent, concluding that Holloway failed "to allege sufficient facts which, if true, would show, by clear and convincing evidence that, despite the evidence of guilt that supports the conviction, no reasonable juror could have found the applicant guilty in light of the alleged new evidence." *Ex parte Holloway*, No. 66,009-01 at 92 (citing *Ex parte Tuley*, 109 S.W.3d 388, 392 (Tex. Crim. App. 2002); *Ex parte Elizondo*, 947 S.W.2d 202, 206 (Tex. Crim. App. 1996)).

Holloway makes no attempt to show that the state court's conclusion was incorrect or based on an unreasonable determination of the facts.  To the extent that Holloway raises only legal arguments to challenge the validity of the jury's verdict against him, he fails to

articulate a valid claim. Actual innocence means "factual innocence, and not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (quoting *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). As noted above, Holloway has failed to show that the evidence against him was legally insufficient or that the prosecutor suppressed favorable, material evidence. Holloway has likewise failed to show that his counsel was ineffective for failing to call witnesses on his behalf. Holloway's allegations do not demonstrate his innocence as a matter of fact.

Apart from the allegations found in his petition, the Court notes that Holloway attempts to present additional evidence that was not presented in state court. This evidence constitutes two nearly identical sworn statements from his brother and his sister-in-law, Carl and Tammy Holloway. (Doc. # 1, Exhibits). At trial, the complainant commented that one of her injuries was pre-existing. She stated that she "scraped" her knee prior to August 15, 2003, when she was playing with her son. *See Court Reporter's Record*, vol. 3, at 42-43. Both sworn accounts from Carl and Tammy Holloway state that the complainant "lied under oath" at trial when she said that she had abrasions on her knee before August 15, 2003. (Doc. # 1, Exhibits). Carl and Tammy Holloway state that they saw the complainant "in the afternoon on August 16, 2003," that she was wearing a short skirt and short-sleeved shirt, and that she did not have any abrasions on her elbows or knees at that time. Holloway claims that he is innocent because, based on this evidence, the complainant is a liar.

Holloway's claim of actual innocence is not clearly cognizable on federal habeas corpus review. In that respect, the Supreme Court has stated that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Rather, a claim of actual innocence is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 404. Accordingly, Holloway's claim of actual innocence is more appropriately considered under the doctrine of procedural default. Here, Holloway's failure to present this evidence properly at trial or on state habeas corpus review is a procedural default because Texas would likely bar another habeas corpus application by the petitioner if he were to return to state court. *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2000) (citing *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995)). To overcome his procedural default, Holloway must establish that he is entitled to relief under *Schlup v. Delo*, 513 U.S. 298 (1995), by showing that his failure to present this information properly in state court should be excused because he is innocent.

In *Schlup*, the Supreme Court explained that a petitioner seeking to surmount a procedural default through a showing of "actual innocence" must support his allegations with new, reliable evidence that was not presented at trial and must show that it was more likely than not that, in light of the new evidence, no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt. *Id.* at 326-27. *See Bosley v.*

*Cain*, 409 F.3d 657, 662 (5th Cir. 2005) (discussing the petitioner's burden of proof under *Schlup*); *see also Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (same).  Examples of new, reliable evidence that may establish factual innocence include exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence.  *Schlup*, at 324; *Sawyer v. Whitley*, 505 U.S. 333, 340 (1992).

The sworn statements presented by Holloway fall far short of the showing required by *Schlup*.  First of all, the evidence does not appear to be new.  The record shows that Carl Holloway testified on his brother's behalf a trial, although he did not mention any of the facts alleged in the sworn statement attached to the petition.  *See Court Reporter's Record*, vol. 3, at 159-62.  Holloway does not explain his failure to present this information at trial or his failure to present the sworn statements on state habeas corpus review.

Further, the evidence does not appear to be reliable.  The sworn statements by Carl and Tammy Holloway say that they observed the complainant during the afternoon "on August 16, 2003," and that she had no abrasions on her knees or elbows at that time.  (Doc. # 1, Exhibits).  These statements are directly contradicted by photographs taken by police officers at the emergency room during the morning hours of August 16, 2003, showing that the complainant was covered in abrasions, cuts, and bruises.  *See Court Reporter's Record*, vol. 5, State's Exhibits 1-5.  Assuming that the date referenced in the sworn statements is inaccurate, and that Carl and Tammy Holloway meant to say that they observed the complainant to be scratch-free on the afternoon of August 15, 2003, the day before the

34

assault occurred, the statements contradict testimony given by Holloway at trial, where he stated that the complainant was not home at that time because she was shopping for school supplies from 10:00 a.m until 6:00 p.m. that evening on August 15, 2003. *See Court Reporter's Record*, vol. 4, at 10.

More importantly, the evidence is not exculpatory. Even if true, the statements provided by Carl and Tammy Holloway do not prove that the complainant was not severely beaten by Holloway during the early morning hours of August 16, 2003.

In summary, Holloway fails to show that he fits within the exception to procedural default under the *Schlup v. Delo* standard. *See House v. Bell*, — U.S. —, 126 S. Ct. 2064 (2006) (discussing at length the evidence presented by the petitioner in support of an actual-innocence exception to the doctrine of procedural default under *Schlup v. Delo*). Assuming that such a claim is cognizable, Holloway likewise fails to meet the more stringent standard of proof needed to make a stand-alone claim of actual innocence under *Herrera v. Collins*, 506 U.S. 390 (1993). *See House*, — U.S. —, 126 S. Ct. at 2086-87 (finding that the petitioner fell short of the threshold showing necessary to make a claim of actual innocence under *Herrera*). For this reason, Holloway is not entitled to federal habeas corpus relief based on his allegations of actual innocence.

## IV.   PETITIONER'S REQUEST FOR DISCOVERY

In his response to the motion for summary judgment, Holloway appears to seek leave to conduct discovery. (Doc. # 9). Discovery is limited in habeas corpus proceedings. "Rule

6 of the Rules Governing § 2254 cases permits discovery only if and only to the extent that the district court finds good cause." *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir.), *cert. denied*, 531 U.S. 957 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 487 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). "Good cause" may be found when a petition for a writ of habeas corpus "establishes a *prima facie* claim for relief." *Murphy*, 205 F.3d at 814. Before authorizing discovery, the Court must first conclude that the specific allegations in the petition "show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Id.* In that regard, petitioner's factual allegations "must be specific, as opposed to merely speculative or conclusory, to justify discovery." *Id.* "Simply put, Rule 6 does not authorize fishing expeditions." *Id.*; *see also Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994), *cert. denied*, 513 U.S. 1192 (1995).

Because Holloway's request for discovery was filed in reply to the respondent's motion for summary judgment, his motion could also be construed as a request for a continuance to conduct discovery under Rule 56(f) of the Federal Rules of Civil Procedure. Motions for a continuance to conduct discovery under Rule 56(f) are "generally favored, and should be liberally granted." *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534 (5th Cir. 1999) (citing *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992)). To justify a continuance, however, a Rule 56(f) motion must demonstrate (1) why the movant needs additional discovery, and (2) how

the additional discovery will likely create a genuine issue of material fact. *See Stearns Airport Equip.*, 170 F.3d at 534-35 (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)).  In that regard, the movant "must be able to demonstrate how postponement and additional discovery will allow him to defeat summary judgment; it is not enough to 'rely on vague assertions that discovery will produce needed, but unspecified, facts.'" *Stearns Airport Equip.*, 170 F.3d at 535 (quoting *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) (citation omitted)).

In this instance, Holloway seeks leave to conduct discovery so that he can support his claims with affidavits or answers to interrogatories.  Holloway does not explain why he has delayed seeking discovery until now and he makes no effort to excuse his failure to muster facts in support of his claims in state court.  More importantly, Holloway does not identify the individuals from whom he seeks discovery and he fails provide any specific facts showing that the proposed discovery would entitle him to habeas corpus relief on his claims. His conclusory allegations are not sufficient to show that good cause is warranted under Habeas Rule 6 or to show that a continuance to conduct discovery is warranted under Rule 56(f) of the Federal Rules of Civil Procedure.  Therefore, Holloway's request for discovery is denied.

## V.    PETITIONER'S MOTION FOR AN EVIDENTIARY HEARING

Holloway also requests an evidentiary hearing on his claims.  (Doc. # 8).  To the extent that Holloway failed to develop any facts related to his claims in state court, the

decision whether to hold an evidentiary hearing is governed by 28 U.S.C. § 2254(e)(2).

Under this statute, if an applicant "failed to develop the factual basis of a claim in State court

proceedings," then the federal habeas corpus court may hold an evidentiary hearing *only* if:

(A)   the claim relies on —

    (I)   a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

    (ii)   a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B)   the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  Holloway fails to show that he is entitled to a hearing under this

statute.

The decision whether to conduct an evidentiary hearing is committed to this Court's

discretion.  *See Michael Williams v. Taylor*, 529 U.S. 420, 436 (2000) (stating that it was

"Congress' intent to avoid unneeded evidentiary hearings in federal habeas corpus"

proceedings); *Robinson v. Johnson*, 151 F.3d 256, 268 (5th Cir. 1998), *cert. denied*, 526 U.S.

1100 (1999).  An evidentiary hearing is not required if there are "no relevant factual disputes

that would require development in order to assess the claims."  *Robinson*, 151 F.3d at 268.

"If it appears that an evidentiary hearing is not required, the judge shall make such

disposition of the petition as justice shall require."  Rule 8 of the Rules Governing Section

38

2254 Cases.  This Court has been able to resolve all issues raised in this case by referring to the pleadings, the state court records, including the trial transcripts and exhibits.  Holloway's request for an evidentiary hearing is therefore denied.

## VI.    CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or

39

that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right.  Therefore, a certificate of appealability will not issue.

## VII.   CONCLUSION AND ORDER

Based on the foregoing, the court **ORDERS** as follows:

1.      The respondent's motion for summary judgment (Doc. # 7) and the respondent's motion to substitute counsel of record (Doc. # 10) are **GRANTED**.

2.      The petition for a writ of habeas corpus (Doc. # 1) and the motion for an evidentiary hearing (Doc. # 8) are **DENIED**, and this case is **DISMISSED** with prejudice.

3.      A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on January 4th, 2008.

Nancy F. Atlas
United States District Judge